

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | **INDICTMENT** |
| ) | |
| Plaintiff, ) | CASE NO. **1:12CR170** |
| ) | |
| v. ) | JUDGE |
| ) | |
| JOHN N. HEARY, ) | Title 18, Sections 1341, 1347 and 2, and |
| ) | Title 42, Section 1320a-7b(b)(2)(B), United |
| Defendant. ) | States Code |

**JUDGE DOWD**

The Grand Jury charges:

### I. GENERAL ALLEGATIONS

1. Defendant JOHN N. HEARY ("HEARY") was a chiropractor licensed by the State of Ohio. He did business under his name and two corporate entities. HealthSource of Medina was the operating name of HEARY's chiropractic practice until approximately October 2009. Medina Health & Wellness Center, Inc. was the corporate name under which HEARY sold durable medical equipment (DME); HEARY was the only referring provider for the prescription of DME from Medina Health & Wellness Center, Inc. Both entities were located at 433 West Liberty Street, Medina, Ohio 44256.

### The Medicare Program

2. The Medicare Program ("Medicare") was a federal health care benefit program providing benefits to individuals who were over the age of 65 or to certain disabled persons ("Medicare beneficiaries"). The Centers for Medicare and Medicaid Services ("CMS") was the agency of the United States Department of Health and Human Services ("HHS") that administered the Medicare program. Medicare coverage was divided into Parts A, B, C and D. Part B covered, among other things, the cost of physician and chiropractic services, DME such as orthotics and back braces as well as other supplies.

3. CMS administered Medicare Part B through private insurance companies known as carriers. National Government Services, Inc., located in Indianapolis, Indiana, processed Medicare Part B DME claims for the State of Ohio at all times relevant to this Indictment.

4. Providers obtained Medicare Part B reimbursement from carriers pursuant to written provider agreements on the basis of reasonable charges for covered services provided to beneficiaries. The carriers received, processed, and paid or rejected those claims according to Medicare rules, regulations and procedures.

5. CMS notified Medicare providers of billing criteria and coverage of services through Medicare Policy Manuals, Carrier Supplier Manuals, Local Coverage Determinations and newsletters published on the Internet and through sections of the Social Security Act.

6. In the Medicare program, participating providers agreed to bill only for services the provider actually rendered, that were medically necessary to diagnose and treat illness or injury and meet the requisite criteria, and for which the provider maintained adequate supporting documentation. Providers agreed with Medicare that lack of adequate documentation can constitute fraud subject to criminal sanctions. A service or item of equipment was defined as

medically necessary, in part, when provided "[f]or the treatment of an injury, sickness, or other health condition and is 1) appropriate and consistent with the diagnosis or symptoms, and consistent with accepted medical standards; 2) not chiefly custodial in nature; 3) not investigational, experimental or unproven; 4) not excessive in scope, duration, or intensity to provide safe, adequate, and appropriate treatment."

7. A Medicare patient who obtained covered medical services or items could either pay for the medical service or item himself and request reimbursement of 80% of the reasonable charge, or assign the right to reimbursement to the provider of the service or item. The remaining 20% of the charge ("co-payment"), was the responsibility of the patient, and could be paid by the patient, the patient's private health insurance company, or Medicaid, if the patient was eligible for Medicaid benefits. This coverage, paying the 20% of the charge that was normally the Medicare patient's responsibility, was commonly referred to as "secondary insurance."

8. DME providers that sought reimbursement under Medicare had an obligation to:

   a. Bill Medicare for only reasonable and necessary medical equipment and services;

   b. Make no false statements or misrepresentations of material facts when requesting payment from Medicare; and

   c. Certify, when presenting a claim, that the medical equipment or service provided was medically necessary.

9. On or about July 15, 2003, HEARY submitted a Medicare Provider Enrollment Form (CMS Form 855I). On the CMS 855I, HEARY signed a certification stating, "I will not knowingly present or cause to be presented a false or fraudulent claim for payment by the Medicare or other federal health care programs, and will not submit claims with deliberate

3

ignorance or reckless disregard of their truth or falsity." On or about August 6, 2003, Medicare assigned JOHN N. HEARY provider number ****631 and UPIN number U***46. Medicare assigned Medina Health and Wellness Center group provider number ****871. These assigned numbers were effective July 15, 2003.

10. On June 27, 2005, HEARY submitted a Medicare Federal Health Care Provider Application (CMS Form 855S) for Durable Medical Equipment, Prosthetics, Orthotics, and Supplies (DMEPOS) for Medina Health and Wellness Center, Inc. HEARY listed himself as the "Director/Officer/President" of Medina Health and Wellness Center, Inc. This application contained a Certification Statement signed by HEARY that included, "I agree to abide by the Medicare laws, regulations, and program instructions applicable to DMEPOS suppliers. The Medicare laws, regulations, and program instructions are available through the Medicare contractor. I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transactions complying with such law, regulations, and program instructions (including, but not limited to, the Federal anti-kickback statute and Stark law), and on the supplier's compliance with all applicable conditions of participation in Medicare."

11. Medina Health and Wellness Center listed on the CMS Form 855S that it was in the business of furnishing custom fabricated orthotics, heat/cold applications, and lumbar brace/belt. Based on the CMS Form 855S, Medina Health and Wellness Center was given a Medicare Provider number *******001 and began submitting claims to Medicare for services in approximately August 2005.

12. On or about May 1, 2008, HEARY signed a Medicare Electronic Data Interchange Enrollment Agreement. This agreement allowed a provider to electronically submit claims to CMS contractors.

### Ohio Bureau of Workers' Compensation

13. On the dates relevant to this Indictment, HEARY's obligations to the Ohio Bureau of Workers' Compensation ("OBWC") were set forth in a Provider Agreement that HEARY signed on or about October 6, 2000. The Provider Agreement obligated HEARY to "bill [OBWC] . . . only for services and items that were actually performed or provided and are medically necessary, cost-effective, and related to the claimed or allowed condition related to the industrial injury/illness." HEARY also agreed to abide by OBWC's "billing policies, procedures and criteria set forth and amended from time to time in the Provider Billing and Reimbursement Manual and/or Provider Bulletin. . . ."

### Medical Mutual of Ohio

14. HEARY signed his first Participation Agreement with Medical Mutual of Ohio ("MMO") in approximately 2000. On the dates relevant to this Indictment, HEARY's obligations to MMO were set forth in a July 18, 2003 Participation Agreement, which HEARY signed on behalf of Medina Health and Wellness Center, Inc.

15. The Participation Agreement provided that HEARY could only bill for covered services that were medically necessary, which was defined to mean "a service, procedure, treatment, accommodation, supply or product that is required to diagnose or treat an injury, ailment, condition, disease, disorder or illness and which MMO determines is appropriate with regard to standards of good medical practice, is consistent with the diagnosis, is not primarily for the convenience of a Provider, a patient or a patient's family, and is the most appropriate level of service, procedure, treatment accommodation, supply or product which can be safely provided to a Covered Person." HEARY also agreed to abide by MMO's "policies, practices and procedures."

/

### Anthem Blue Cross and Blue Shield

16. HEARY signed his first Provider Agreement with Anthem Blue Cross and Blue Shield ("Anthem") in approximately 2003. On the dates relevant to this Indictment, HEARY's obligations to Anthem were set forth in a February 2, 2007 Provider Agreement, which HEARY signed on behalf of Medina Health and Wellness Center, Inc.

17. The Participation Agreement provided that HEARY could only bill for covered services that were medically necessary, which was defined to mean a health service "for the treatment of an injury, sickness, or other health condition and is: (1) appropriate and consistent with the diagnosis or symptoms, and consistent with accepted medical standards; (2) not chiefly custodial in nature; (3) not investigational, experimental or unproven; (4) not excessive in scope, duration, or intensity to provide safe, adequate, and appropriate treatment []; and (5) not provided only as a convenience to the Covered Individual or professional provider or health care facility."

### Billing Codes and Equipment

18. The American Medical Association assigned and published five digit codes, known as the Current Procedural Terminology (CPT) and Level 1 Healthcare Common Procedure Coding System (HCPCS) codes. CMS assigned Level 2 HCPCS codes that cover, in part, DME. The codes were a systematic listing of procedures and services performed or ordered by health care providers. The purpose of the terminology was to provide uniform language that accurately described medical, surgical, and diagnostic services and supplies, thereby providing an effective means for reliable nationwide communication among physicians, patients and third parties. The procedures and services represented by CPT and HCPCS codes were health care benefits, items, and services within the meaning of Title 18, United States Code, Section 24(b).

19. **CPT Code 97110 – Therapeutic Exercises.** Billed in 15 minute intervals, this code referred to exercises performed in the office to develop strength and endurance, range of motion and flexibility. CPT Code 97110 required direct one-on-one contact with the patient. Exercises performed in a group setting (meaning two or more patients) were required to be billed with CPT Code 97150.

20. **Back Braces.** The HCPCS codes L0631 and L0637 referred to hard shell lower back braces that are held in place by a strap that goes around the midsection. They were more specifically defined as:

> L0631 Lumbar-sacral orthosis, sagittal control, with rigid anterior and posterior panels, posterior extends from sacrococcygeal junction to T-9 vertebra, produces intercavitary pressure to reduce load on the intervertebral discs, includes straps, pendulous abdomen design, prefabricated, includes fitting and adjustment

> L0637 Lumbar-sacral orthosis, sagittal-coronal control, with rigid anterior and posterior frame/panels, posterior extends from sacrococcygeal junction to T-9 vertebra, lateral strength provided by rigid lateral frame/panels, produces intracavitary pressure to reduce load on intervertebral discs, includes straps, closures, may include padding, shoulder straps, pendulous abdomen design, prefabricated, includes fitting and adjustment

21. **Boots.** HCPCS codes L1940, L2275, L2280, L2330, L2340, L2820, and L3030 referred to orthopedic devices that were worn inside shoes, more specifically defined as:

> L1940 Ankle Foot Orthotic, plastic or other material, custom-fabricated

> L2275 Addition to Lower Extremity, varus/valgus correction, plastic modification, padded modification, padded/lined

> L2280 Addition to Lower Extremity, molded inner boot

> L2330 Addition to Lower extremity, lacer molded to patient model

> L2340 Addition to Lower extremity, pre-tibial shell, molded to patient model

7

>L2820 Addition to lower extremity orthosis, soft interface for molded plastic, below knee section
>
>L3030 Foot insert, removable, formed to patient foot

22. **TENS Units.** HCPCS code E0730 referred to a small battery-powered unit that sent electrical impulses through electrodes, more specifically defined as:

>E0730 Transcutaneous electrical nerve stimulation (TENS) device, four more leads, for multiple nerve stimulation

## II. THE SCHEME TO DEFRAUD

23. From in or around August 2005 through in or around June 2010, Defendant JOHN N. HEARY did devise and intend to devise a scheme and artifice to defraud and to obtain money from federal health care benefit programs by means of false and fraudulent pretenses, representations and promises.

24. It was part of the scheme to defraud that HEARY caused patients insured by Medicare, MMO, and Anthem to purchase boots, back braces, and TENS units from Medina Health & Wellness Center, Inc. by:

>a. Purchasing advertising in local newspapers, promoting HealthSource of Medina and Medina Health & Wellness Center, Inc.'s free chiropractic exams, in violation of the Anti-Kickback statute, 42 U.S.C. § 1320a-7b(b)(2)(B);
>
>b. Conducting telephone solicitations of potential clients;
>
>c. In violation of the Anti-Kickback statute, 42 U.S.C. § 1320a-7b(b)(2)(B), inducing the potential customers responding to the advertisements and telephone solicitations to come to his office for evaluation, by offering:

      i.    free exams, thereby improperly waiving the Medicare co-payment and deductible requirement; or

      ii.    free dinners at local restaurants.

d. Providing dinner certificates, gift cards, travel vouchers, and other forms of compensation ranging in value from $25 to $150 to patients who referred someone to HEARY.

25. It was a further part of the scheme to defraud that HEARY:

a. Used a scale to determine that patients were "out of balance" and needed the boots to correct the problem, a test that had no clinical value;

b. Told patients who questioned the cost of the custom boots that they were part of a "free package deal" and would be covered by their insurance;

c. Falsely claimed in medical charts that patients needed boots because of "tissue atrophy";

d. Falsely reported that patients had severe pain precluding activity despite the patients' self-report to the contrary;

e. Ordered and billed for boots despite the lack of an appropriate clinical evaluation;

f. Ordered and billed for bilateral dispensation of boots (boots for both feet), which was extremely unusual even for patients who needed an ankle/foot orthotic for one foot and was of no clinical value;

g. Billed health care benefit programs for boots on the date of the first visit before the boots were provided, in violation of regulations that required billing after the equipment had actually been provided, thus ensuring that

        HEARY was paid at the earliest possible date and also ensuring that he was paid regardless of whether the patient actually received the boots;

    h.    Billed health care benefit programs for boots even when he did not provide them to the patient; and

    i.    Failed to maintain acceptable proof that he delivered the boots.

26.    It was a further part of the scheme to defraud that HEARY:

    a.    Ordered back braces for patients on their first visit instead of attempting other treatments first or exploring alternative devices / prefabricated DME;

    b.    Ordered the most expensive back brace without any demonstration of medical necessity or any pursuit of a less costly alternative; and

    c.    Failed to maintain acceptable proof that he delivered the back brace.

27.    It was a further part of the scheme to defraud that HEARY:

    a.    Prescribed the patient a TENS unit before attempting a course of care to determine that a TENS unit was medically necessary;

    b.    Prescribed the patient a TENS unit instead of renting one to him/her by falsely claiming that there was a medical need for the device to be used indefinitely;

    c.    Failed to document the medical necessity for a TENS unit;

    d.    Sometimes billed for multiple TENS units for the same family when there was no medical necessity for multiple units; and

    e.    Falsified the prognosis and the severity of the condition on the prescription and certification of medical necessity.

28. It was a further part of the scheme to defraud that HEARY billed for services that were never rendered. HEARY regularly billed insurance carriers for therapeutic exercises with CPT Code 97110 that were allegedly performed in HEARY's offices when in fact no therapeutic exercises were performed by patients in HEARY's offices under supervision.

29. It was a further part of the scheme to defraud that even when therapeutic services were provided, HEARY sometimes billed improperly using CPT Code 97110, a code that required direct one-on-one contact between the provider and the patient. In those situations, CPT Code 97110 was improper because HEARY's staff provided the services in a group setting, and thus CPT Code 97150 should have been used.

30. It was a further part of the scheme to defraud that between in or around August 2005 and in or around June 2010, HEARY caused the submission of over $1,000,000 worth of false and fraudulent claims to Medicare, OBWC, MMO, and Anthem.

The Grand Jury further charges:

## COUNTS 1 - 38
(Health Care Fraud, 18 U.S.C. § 1347, and § 2)

31. The Grand Jury realleges and incorporates by reference the allegations set forth in paragraphs 1 through 30 of the Indictment as if fully set forth herein.

32. From in or around August 2005, through in or around June 2010, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant JOHN N. HEARY knowingly and willfully executed, attempted to execute, and aided and abetted the execution and attempted execution of a scheme and artifice to defraud the Medicare, OBWC, MMO, and Anthem federal health care benefit programs, and to obtain, by means of false and fraudulent pretenses, representations and promises described herein, money and property owned by, and under the

11

custody and control of, a federal health care benefit program, namely, Medicare, OBWC, MMO, and Anthem, in connection with the delivery of and payment for health care benefits, items and services.

33. On or about the dates listed below, in the Northern District of Ohio and elsewhere, Defendant JOHN N. HEARY did execute and attempt to execute the scheme described above by submitting the claims for reimbursement set forth below:

| Count | Purported Service Date | Claim Date | Amount Claimed | Medical Equipment/Service | Benefit Program | Beneficiary |
|---|---|---|---|---|---|---|
| 1 | 06/25/07 | 06/28/07 | $4,300.00 | Boots | Medicare | B.F.S. |
| 2 | 08/14/07 | 08/14/07 | $995.00 | Back Brace | Medicare | B.F.S. |
| 3 | 07/24/07 | 07/26/07 | $4,500.00 | Boots | Medicare | F.A.C. |
| 4 | 08/14/07 | 08/14/07 | $995.00 | Back Brace | Medicare | F.A.C. |
| 5 | 07/24/07 | 07/26/07 | $4,300.00 | Boots | Medicare | L.N.C. |
| 6 | 08/14/07 | 08/14/07 | $995.00 | Back Brace | Medicare | L.N.C. |
| 7 | 08/28/07 | 08/28/07 | $212.00 | CPT 97110 | MMO | L.N.C. |
| 8 | 08/02/07 | 08/06/07 | $4,300.00 | Boots | Medicare | S.F.D. |
| 9 | 08/02/07 | 08/06/07 | $995.00 | Back Brace | Medicare | S.F.D. |
| 10 | 08/02/07 | 08/06/07 | $3,500.00 | Boots | Medicare | S.J.D. |
| 11 | 08/02/07 | 08/06/07 | $995.00 | Back Brace | Medicare | S.J.D. |
| 12 | 06/05/08 | 07/02/08 | $2,770.00 | Boots | Medicare | R.A.P. |
| 13 | 06/05/08 | 07/02/08 | $1,250.00 | Back Brace | Medicare | R.A.P. |
| 14 | 06/05/08 | 07/02/08 | $2,770.00 | Boots | Medicare | B.J.P. |
| 15 | 06/05/08 | 07/02/08 | $1,250.00 | Back Brace | Medicare | B.J.P. |
| 16 | 06/20/08 | 07/05/08 | $2,770.00 | Boots | Medicare | P.S.G. |

| 17 | 06/20/08 | 07/05/08 | $1,250.00 | Back Brace | Medicare | P.S.G. |
|---|---|---|---|---|---|---|
| 18 | 06/20/08 | 07/05/08 | $2,770.00 | Boots | Medicare | L.J.G. |
| 19 | 06/20/08 | 07/05/08 | $1,250.00 | Back Brace | Medicare | L.J.G. |
| 20 | 09/15/08 | 09/16/08 | $2,770.00 | Boots | Medicare | C.E.S. |
| 21 | 09/15/08 | 09/16/08 | $1,250.00 | Back Brace | Medicare | C.E.S. |
| 22 | 09/15/08 | 09/16/08 | $2,770.00 | Boots | Medicare | E.J.S. |
| 23 | 09/15/08 | 09/16/08 | $1,250.00 | Back Brace | Medicare | E.J.S. |
| 24 | 08/22/07 | 08/24/07 | $995.00 | Back Brace | MMO | J.M. |
| 25 | 08/23/07 | 08/29/07 | $475.00 | TENS Unit | MMO | J.M. |
| 26 | 08/23/07 | 08/30/07 | $2,770.00 | Boots | MMO | J.M. |
| 27 | 04/13/07 | 05/24/07 | $995.00 | Back Brace | Anthem | D.C. |
| 28 | 04/13/07 | 05/24/07 | $450.00 | TENS Unit | Anthem | D.C. |
| 29 | 04/13/07 | 05/24/07 | $4,300.00 | Boots | Anthem | D.C. |
| 30 | 08/30/07 | 08/30/07 | $212.00 | CPT 97110 | Anthem | D.C. |
| 31 | 01/28/08 | 02/05/08 | $995.00 | Back Brace | Anthem | M.A. |
| 32 | 01/28/08 | 02/05/08 | $475.00 | TENS Unit | Anthem | M.A. |
| 33 | 01/31/08 | 02/11/08 | $2,770.00 | Boots | Anthem | M.A. |
| 34 | 03/03/08 | 03/12/08 | $995.00 | Back Brace | Anthem | S.G. |
| 35 | 03/03/08 | 03/12/08 | $475.00 | TENS Unit | Anthem | S.G. |
| 36 | 03/03/08 | 03/12/08 | $2,770.00 | Boots | Anthem | S.G. |
| 37 | 10/19/09 | 11/04/09 | $90.00 | CPT 97110 | OBWC | K.L. |
| 38 | 5/26/10 | 6/07/10 | $90.00 | CPT 97110 | OBWC | K.L. |

All in violation of Title 18, United States Code, Sections 1347 and 2.

The Grand Jury further charges:

## COUNTS 39 – 48
(Mail Fraud, 18 U.S.C. §§ 1341, and 2)

34. The Grand Jury realleges and incorporates by reference the allegations set forth in paragraphs 1 through 30 of the Indictment as if fully set forth herein.

35. From in or around August 2005, through in or around June 2010, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant JOHN N. HEARY did devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises as described herein.

36. For the purpose of executing the foregoing scheme and artifice to defraud and attempting so to do, Defendant JOHN N. HEARY did place and cause to be placed in an authorized depository for mail matter, certain matters and things described below to be sent and delivered by the U.S. Postal Service according to the directions thereon, consisting of checks to be mailed to HEARY at 433 West Liberty Street, Medina, Ohio 44256, located in the Northern District of Ohio, Eastern Division, in payment for services for beneficiaries of federal health care benefit programs, with each mailing constituting a separate count of Mail Fraud, including, but not limited to, the following:

| Count | Date | Amount Paid | Payor/Beneficiary | Mailed From | Mailed To |
|---|---|---|---|---|---|
| 39 | 08/08/07 | $6,802.99 | Medicare/ L.N.C./F.A.C. | National Government Services | Medina Health & Wellness |
| 40 | 08/20/07 | $8,639.13 | Medicare/ S.F.D./S.J.D. | National Government Services | Medina Health & Wellness |
| 41 | 07/15/08 | $23,057.26 | Medicare/ R.A.P./B.J.P. P.S.G./L.J.G. | National Government Services | Medina Health & Wellness |

14

| Count | Date | Amount Paid | Payor/ Beneficiary | Mailed From | Mailed To |
|---|---|---|---|---|---|
| 42 | 09/29/08 | $9,316.77 | Medicare/ C.E.S./E.J.S. | National Government Services | Medina Health & Wellness |
| 43 | 07/11/07 | $2,190.13 | Medicare/ B.F.S. | National Government Services | Medina Health & Wellness |
| 44 | 08/27/07 | $9,085.93 | Medicare/ B.F.S. | National Government Services | Medina Health & Wellness |
| 45 | 6/21/07 | $1,582.09 | Anthem/D.C. | Anthem | Medina Health & Wellness |
| 46 | 2/8/08 | $477.45 | Anthem/M.A. | Anthem | Medina Health & Wellness |
| 47 | 4/10/08 | $3,137.13 | Anthem/S.G. | Anthem | Medina Health & Wellness |
| 48 | 9/28/07 | $1,179.12 | MMO/J.M. | MMO | Medina Health & Wellness |

All in violation of Title 18, United States Code, Sections 1341 and 2.

The Grand Jury further charges:

COUNTS 49 -52
(Illegal Kickbacks, 42 U.S.C. § 1320a-7b(b)(2)(B))

37. The Grand Jury realleges and incorporates by reference the allegations set forth in paragraphs 1 through 30 of the Indictment as if fully set forth herein.

38. On or about the dates listed below, in the Northern District of Ohio, Eastern Division, Defendant JOHN N. HEARY knowingly and willfully offered and paid a remuneration (including a kickback, bribe, and rebate) directly and indirectly, overtly and covertly, in cash and in kind, to a person to induce such person to purchase and order an item for which payment was made in whole or in part under a federal health care benefit program, to wit: Medicare. HEARY offered and caused to be offered to the patients listed below a free dinner if the patient agreed to

come to his office for services that HEARY promised would be covered wholly by Medicare. Each such instance is a separate count of this indictment:

| Count | Date | Patient |
|---|---|---|
| 49 | 08/02/07 | S.F.D. |
| 50 | 08/02/07 | S.J.D. |
| 51 | 07/26/07 | F.A.C. |
| 52 | 07/26/07 | L.N.C. |

All in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(B).

The Grand Jury further charges:

## COUNTS 53-56
(Illegal Kickbacks, 42 U.S.C. § 1320a-7b(b)(2)(B))

39. The Grand Jury realleges and incorporates by reference the allegations set forth in paragraphs 1 through 30 of the Indictment as if fully set forth herein.

40. On or about the dates listed below, in the Northern District of Ohio, Eastern Division, Defendant JOHN N. HEARY knowingly and willfully offered and paid a remuneration (including a kickback, bribe, and rebate) directly and indirectly, overtly and covertly, in cash and in kind, to a person to induce such person to purchase and order an item for which payment was made in whole or in part under a federal health care benefit program, to wit: Medicare. HEARY offered and caused to be offered to the patients listed below waiver of the required co-payment if the patient agreed to come to his office for services that HEARY promised would be covered wholly by Medicare. Each such instance is a separate count of this indictment:

| Count | Date | Patient |
|---|---|---|
| 53 | 07/26/07 | L.N.C. |

| Count | Date | Patient |
|---|---|---|
| 54 | 07/26/07 | F.A.C. |
| 55 | 06/20/08 | L.J.G. |
| 56 | 06/20/08 | P.S.G. |

All in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(B).

A TRUE BILL.

Original document - - Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.